UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEMAR SHANTA RHOME,<br><br>Plaintiff,<br><br>v.<br><br>GRANDTHOM, et al.,<br><br>Defendant. | CASE NO. 3:25-cv-06027-LK-BAT<br><br>**REPORT AND RECOMMENDATION FOR DISMISSAL WITH PREJUDICE** |

Before the Court is Plaintiff's amended complaint, Dkt. 11, and Defendants' motion for summary judgment. Dkt. 43. For the reasons below, the Court recommends granting Defendants' motion for summary judgment and **DISMISSING** the case with prejudice. If this recommendation is adopted, the Court recommends striking all other pending motions.

## BACKGROUND

### A. Plaintiff's Amended Complaint

On November 11, 2025, Plaintiff, a prisoner serving a state sentence at the Clallam Bay Corrections Center, (CBCC) filed a *pro se* 42 U.S.C. § 1983 civil rights complaint, requesting he be released from the custody of the Washington State Department of Corrections (DOC). Dkt. 6. The Court declined service of the complaint and directed Plaintiff to file an amended complaint by December 19, 2025, because the relief Plaintiff requested, immediate release from prison,

must be brought in a 28 U.S.C. § 2254 habeas petition, not a § 1983 civil rights complaint.

On December 19, 2025, Plaintiff filed an amended complaint which the Court ordered served on Defendants. Dkts. 11 and 12. The amended complaint names as Defendants CBCC Officers "Grandholm" and "Scalpdiver"[1]. *See* Amended Complaint, Dkt. 11 at 3. In Count I, Plaintiff alleges "8th Amendment to the U.S. Constitution." *Id.* at 4. In support, the amended complaint states "The fan was being misused other than what it was intended for to drown out my music convos" *id*. at 5, the fan was turned on because lies were told about Plaintiff's rap music, prisoners should be able to sing if they want, *id.* at 6, and Plaintiff was "punished for rapping." *Id.* at 7-12. Plaintiff included in his complaint written chronology logs which appear to have been created by CBCC. The logs in indicate the fan was used:

> to provide some measure of white noise relief to others housed in the pod. This continued behavior is difficult to manage and has proven resistant to traditional methods . . . for his incarceration Rhome has incurred 263 serious infractions groups . . . Resource Team has interviewed Rhome and are willing to work with him.

*Id.* at 8.

Count II of the amended complaint alleges "8th Amendment to the U.S. Constitution." *Id.* at 13. In support, Plaintiff alleges "officers stole and ripped up mail in my room for filing grievances . . . Grandholm did this . . . and Scalpdiver was told to withhold magazines and throw away Plaintiff's Prison News, *id.*, and for a ten-year period Plaintiff received only three issues. *Id.* at 23.

Count III of the amended complaint alleges 8th Amendment to U.S. Constitution" on the grounds Plaintiff's therapist Ms. Galesphie "won't come see me," *id.*, and provides "ineffective

[1] Defendants indicate the correct spelling of the Defendants' names are Greg Granum and Steven Salsgiver. *See* Answer to Amended Complaint, Dkt. 29.

assistance of therapist." *Id.* at 24. Plaintiff also alleges in this claim that "DOC stole money," *id.* at 26, because Plaintiff is a "foreign national" protected by the "Moors Sundry Act." *Id.* The amended complaint also includes copies of reports and correspondence generated indicating Plaintiff has been assessed for mental health issues including psychotic disorder, Attention-Deficit, paranoia, narcissistic features, antisocial personality disorder and oppositional defiant disorder. *Id.* at 27-51. Plaintiff indicates that due to the prison's failure to provide him with mental health treatment, he cannot "be successful doing DOC requirements," *id.* at 51, and the Court should order this release or transfer because he "never intended for the murder to happen." *Id.* at 52. Plaintiff further contends he is at a substantial risk to harm himself, *id.,* and he is "doing better over 2 weeks they don't turn fan on, "but the fan was turned on when "I was in back of room singing." *Id.* at 64. Plaintiff further contends there is nothing requiring him to participate him in prison programming but he "completed programming" so he will be "entitled to higher level promotions." *Id.* at 65.

Plaintiff also included emergency requests for medical service. The clinician stated:

> I arrived in the unit @ 13:05 & found a C/O posted outside Rhome's cell. I attempted to engage him multiple times, identifying my purpose. He poked his head from under his covers briefly but would not speak. This has become a pattern of behavior for Mr. Rhome, replacing his prior pattern of declaring MH Emergencies repetitively.

*Id*. at 71.

As relief, Plaintiff requests "2 million dollars and all granted and the corporate court to order I be transferred to another facility to end the abuse and further mistreatment if not then to get Warden Eddie Reetz to tell CUS to remove fan off pod." *Id.* at 93.

**B. Motion for Summary Judgment**

On June 25, 2026, the two named Defendants, corrections officers Granum and Salsgiver, moved for summary judgment. Dkt. 43. Plaintiff has not responded to the motion which was noted for July 23, 2026.

In their motion, Defendants state they are officers assigned to the CBCC intensive management unit (IMU) to monitor the unit. They state they are not resolution requests specialist and are not involved with the resolution request process. They also are not mental health providers and are not involved with mental health services at CBCC. *See* Summary Judgment Motion Dkt. 43 at 2.

Defendants indicate individuals who are placed in the IMU require heightened security due to chronic behavioral problems, threats to the safety of staff and other incarcerated persons or due to extreme protection needs. *Id.* Plaintiff was convicted in 2006 with Murder in the First Degree and has been housed in the IMU since he arrived at CBCC in June 2025. Since Plaintiff has arrived, he has engaged in disruptive behavior resulting in 331 disciplinary violations. Plaintiff has regularly been disruptive to staff and other incarcerated individuals by continuously yelling derogatory, inflammatory and hostile statements. *Id.* Plaintiff has twice been found guilty of serious infractions for harassing, using abusive language or engaging in other offensive behavior base on race, religion, sexual orientation, etc. *Id.* at 3.

Defendants state Plaintiff's behavior has cause constant distress to other incarcerated individuals in the IMU who consistently asked for new cell assignments or mental health services due to Plaintiff's behavior. While CBCC staff have attempted to address Plaintiff's behavior, Plaintiff has refused to stop his behavior and continues to yell profanity and derogatory statements at others in the IMU. *Id.*

To alleviate the stress on others that Plaintiff's behavior causes, the CBCC supervisory staff placed an "air purifier" that provides "constant ambient white notice within the unit for other incarcerated individuals and IMU staff." *Id.* at 4. The air purifier creates a sound comparable to a vacuum cleaner and was used during the COVID-19 pandemic. Defendants contend the purifier was turned on only when Plaintiff began harassing other incarcerated individuals or IMU staff and was not used during times Plaintiff was quiet. *Id.*

## DISCUSSION

### A. Summary Judgment Standards

The Court may grant Defendants' summary judgment motion only if they show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id*. The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), overruled on other grounds by *Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

Defendants, as the movants, bear both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If Defendants carry their burden of production, Plaintiff must produce evidence to support his claim or defense." *Id*. at 1103. Plaintiff "must do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co*., 475 U.S. at 586. Plaintiff must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If Plaintiff fails to produce evidence that supports his claim, the Court may grant summary judgment in favor of Defendants. *Celotex Corp*., 477 U.S. at 323.

"[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id*.; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp*., 475 U.S. at 586. ("When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587.

Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson*, 477 U.S. at 248. In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1121 (9th Cir. 1995).

The Court applies these standards in addressing defendants' motion for summary judgment regarding each claim Plaintiff has brought under the Eighth Amendment: Count I, use of "fan" in IMU; Count II theft and destruction of Plaintiff's mail; and Count III. Mental health therapist's failure to provide adequate medical care.

**B. Section 1983 and Eighth Amendment Claims**

Plaintiff filed a civil rights complaint under 42 U.S.C. § 1983. To state a claim under § 1983, Plaintiff's amended complaint must allege: (a) the conduct complained of was committed

by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985). under a § 1983 lawsuit, a plaintiff must prove

As to the second prong, Plaintiff must show the named Defendant caused or personally participated in causing the deprivation of his specific protected constitutional right. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A particular Defendant is liable for "causing" the deprivation of a constitutional right if he or she commits an affirmative act, or omits to perform an act, that he or she is legally required to do, and which causes the plaintiff's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). A conclusory allegation against a Defendant is insufficient to state a claim for relief. Rather. Plaintiff must set forth specific facts showing a causal connection between each Defendant's actions and the harm allegedly suffered. *See Guillen v. Owens*, 577 Fed. App'x 664 (9th Cir. 2014) (conclusory allegations of retaliation insufficient); *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (prisoner "must allege a causal connection between the adverse action and the protected conduct"); *see generally Ashcroft v. Iqbal*, 556 U.S. at 678 (conclusory allegations do not state a cognizable claim for relief).

**B. Plaintiff's Claims**

Plaintiff filed an amended complaint using the stock prisoner civil rights complaint form to bring actions under 42 U.S.C. § 1983. Count I alleges Defendants violated Plaintiff's Eighth Amendment rights by running a "fan" in the IMU. The use of the fan involves a prison condition. To prove an Eighth Amendment violation based on a prison condition, Plaintiff must satisfy a

two-part test. The objective part of the test requires Plaintiff to show Defendants deprived him the "minimal civilized measure of life's necessities." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir.2002) (internal quotation marks and citations omitted). The objective test requires Plaintiff to demonstrate conditions that pose a substantial risk of serious harm that present an excessive risk to his health or safety. *Norbert v. City & Cty. of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021). The Court must consider the circumstances, nature, and duration of a deprivation of these necessities to determine if the Eight Amendment was violated. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

The subjective part requires Plaintiff to show Defendants "acted with 'deliberate indifference' in doing so." *Id*. To establish deliberate indifference, Plaintiff must show Defendants knew of an excessive risk to inmate health or safety that Defendants deliberately ignored. *Johnson v. Lewis*, 217 F.3d at 734. Whether Defendants possessed such knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id*. (internal quotation marks omitted). Knowledge of a risk of harm can be inferred where that risk is "obvious," but prison officials are not liable if they respond reasonably to the risk. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir.2010).

Here the amended complaint alleges Defendants turned on the fan "numerous times" between July 2025 and December 2025. *See* Amended Petition, Dkt. 11 at 5. The amended complaint appears to allege the fan was turned on in connection with Plaintiff's "rap music," as it states "evidence proves fan was still on just when I was talking they claim I was loud Granthom with glasses is an openly Gay man who heard me rappin in back of cell." *Id.* Plaintiff contends his singing is an "absolute expression for rights to be understood and to get through life." *Id* at 6.

The amended complaint further alleges the fan disrupts Plaintiff's "sleep" and causes emotional distress. *Id.* at 7.

The undisputed facts indicate a fan was placed on the IMU to provide white noise in response to numerous complaints by other prisoners and staff about Plaintiff's yelling, profanity and derogatory statements. *See* Dkt. 44, Declaration of Defendant Granum. The fan is the same type of fan used during the COVID-19 pandemic; there is no evidence the fan created an excessive risk to inmate health or safety, and the CBCC received no complaints about the use of the fan from other inmates. *Id.* Plaintiff does not deny these factual assertions, nor does he present any evidence to the contrary. Rather, Plaintiff contends in his amended complaint the use of the fan violated his right to vocally express himself, and to rap. The Court finds under these undisputed facts, the use of the fan to provide white noise did not deprive Plaintiff of the minimal civilized measure of life, and Defendants did not act with deliberate indifference to the health of any inmate. Plaintiff's Eighth Amendment claim should be dismissed because it fails to meet the objective part of the Eighth Amendment claim test.

While Plaintiff claims in the amended complaint that the fan disrupted his sleep and caused him distress, this is an insufficient conclusory statement that does not defeat summary judgment. *See Infanzon v. Allstate Insurance Company*, 2024 WL 3631140 at * 2 (9th Cir. Aug. 3, 2024) citing *Taylor v. List*, 880 F.2d 1040, 1045-46 (9th Cir. 1989) ("summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").

The Court accordingly recommends dismissing Count I with prejudice.

Count II alleges the theft or destruction of Plaintiff's mail. In specific the amended complaint alleges "officer stole and ripped up mail in my room for filing grievances" and "Grandholm did this," Grandholm told Plaintiff to contact the mailroom about missing mail, and "Scalpdiver" was told to throw mail away. Dkt. 11 at 13. Prisoners enjoy a First Amendment right to send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir.1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). However, Plaintiff's allegations are conclusory and inconsistent with information he attached to his amended complaint. The amended complaint contains a "subscriber database." The officers named in the database do not include Defendants, (Dkt. 11, amended complaint at 18), and Defendants submit they have no knowledge about Plaintiff's theft or mail claims. Dkts. 44 and 45. Plaintiff fails to support his claim with any factual support and the Court notes that while he attached numerous grievances to the amended complaint, there are no grievances regarding improper taking of mail.

In addition, claims related to the loss of personal property are not cognizable in a § 1983 complaint. The Fourteenth Amendment provides, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Constitution's due process guarantee generally "requires some kind of hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). However, when a prisoner alleges an intentional or negligent deprivation of his property by an unauthorized action of a prison official, there is no violation of procedural due process if the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 468 (1984) (intentional deprivations of property); *Parratt v. Taylor*, 451 U.S. 527, 537 (1981) (negligent deprivations of property).

Under Washington law, Plaintiff may file a tort claim and a civil action against the state

of Washington for the unlawful loss or destruction of his personal property. RCW 72.02.045 (state and/or state officials liable for the negligent or intentional loss of inmate property); RCW 4.92.090.-.100 (state liable for the tortious conduct of state officials and employees); *see also Jeffries v. Reed*, 631 F. Supp. 1212, 1216 (E.D. WA. 1986) (state of Washington provides a meaningful remedy for the loss of an inmate's property by state officials).

In sum, the claim set forth in Count II is based upon an inadequate conclusory statement[2] that is insufficient to fend off a motion for summary judgment and because the state of Washington provides a meaningful remedy for the loss of personal property, any constitutional deprivation of property is precluded. The Court accordingly recommends dismissing Count II with prejudice.

Count III alleges a mental health therapist failed to provide Plaintiff adequate medical care. An Eighth Amendment medical claim has two elements: (1) "the seriousness of the prisoner's medical need and [(2)] the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). This claim fails against the named Defendants Granum and Salsgiver, because it is directed against a therapist and medical staff, and alleges these persons failed to provide Plaintiff with adequate medical care. Because Plaintiff's Eighth Amendment claim requires evidence that the named Defendants affirmatively performed acts that violated Plaintiff's constitutional rights, the claim asserted in Count III against the named Defendants should be dismissed with prejudice.

---

[2] To the extent Count II is construed as alleging Defendants took Plaintiff's mail or property in retaliation for grievances he filed, such a claim is similarly based upon a conclusory allegation that lacks any factual support.

The Court also notes the amended complaint alleges the Department of Corrections has "stole money" because under the Moors Sundry Act, fees and fines cannot be levied against Plaintiff as he is a "foreign national" and the Court should grant "some kind of justice release court to set release." Dkt. 11 at 26. Plaintiff also contends he should be released because he "never intended the murder to happen" and he apologizes for his past behavior. *Id.* at 52. The allegations appeared to be connected to Plaintiff's murder conviction and sentence and are thus not properly before the Court. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

The Court takes notice of its own records that Plaintiff has filed several habeas petitions and civil rights complaints in this Court. Plaintiff was convicted in 2006 for first degree murder in King County Superior Court in *State v. Rhome,* King County Superior Court No. 03-C-09947-0 SEA and sentenced to a term of imprisonment of 347 months. Plaintiff filed his first habeas petition challenging this conviction on August 21, 2006 in *Rhome v. Washington State Penitentiary*, 2:06-cv-01207-JLR. The Court dismissed the petition without prejudice because Plaintiff's state challenges to the conviction were still pending and the habeas petition was thus prematurely filed.

In 2007, Plaintiff filed a § 1983 complaint in *Rhome v. Link*, 2:07-cv-01065-RAJ-MJB against his former appointed criminal counsel. The complaint was dismissed on January 8, 2008.

In 2008, Plaintiff filed a § 1983 complaint in *Rhome v. Barber*, 2:08-cv-01335-MJP-BAT. This complaint was dismissed on November 21, 2008.

In 2008, Plaintiff filed a second § 2254 habeas petition this time challenging a 2002 King County robbery conviction. *See Rhome v. Uttecht*, 2:08-cv-00691-JCC. This petition was dismissed with prejudice

In 2009, Plaintiff filed a third § 2254 habeas petition, this time challenging his 2006 first-degree murder conviction in King County Superior Court. *See Rhome v. Fraker*, 2:09-cv-00085-RSL. The petition was dismissed with prejudice and the Court of Appeals for the Ninth Circuit issued a mandate affirming the dismissal on March 31, 2014.

In 2016, Plaintiff filed a fourth § 2254 habeas petition again challenging his 2006 King County first degree murder conviction. *See Rhome v. Haynes*, 2:16-cv-00234-RSL. The petition was dismissed, and no appeal was taken.

On October 27, 2025, Plaintiff filed a federal writ of habeas corpus challenging his King County first degree murder conviction and moving for release or transfer from the DOC. *See Rhome v. Reetz*, 2:25-cv-02176-BJR-DWC. This habeas petition was dismissed on February 20, 2026.

## CONCLUSION

For the foregoing reasons the Court recommends:

1. Counts amended complaint and the claims against the named Defendants Granum and Salsgiver be DISMISSED with prejudice.

2. If this recommendation is adopted the Court recommends striking all pending motions, Dkts. 41 and 42.

2. The Clerk shall provide Plaintiff and the assigned district judge with a copy of this order.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, Plaintiff shall not file a notice of appeal in the Court of Appeals for the Ninth Circuit filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **August 18, 2026.** The Clerk shall note the matter for **August 19, 2026**, as ready for the District Judge's consideration. The failure to timely object may affect the right to appeal.

DATED this 3rd day of August, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge